**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRINCETON FOOTBALL PARTNERS LLC, | CIVIL ACTION NO. 11-5227 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| FOOTBALL ASSOCIATION OF IRELAND, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Princeton Football Partners LLC ("PFP"), brings this action against Defendants, Football Association of Ireland ("FAI"), John Delaney, Padraig Smith, Noel Mooney, Rory Smyth, and Limerick District Management Council ("LDMC"), seeking damages related to PFP's investment in an Irish football club based in Limerick, Ireland. (See dkt. entry no. 9, Am. Compl.) FAI, Delaney, Smith, Mooney, and Smyth (collectively, "Moving Defendants") now move to dismiss the Amended Complaint insofar as it is asserted against them on several grounds. (See dkt. entry no. 11, Mot.; dkt. entry no. 11-2, Moving Defs.' Br.; see also dkt. entry no. 21, Smyth Not. of Mot. (joining Motion and Moving Defs.' Br.).) PFP opposes the Motion. (See generally dkt. entry no. 17, Pl. Opp'n Br.)

The Court will resolve the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b).  The Court, for the reasons that follow, will grant the Motion and dismiss the Amended Complaint insofar as it is asserted against Moving Defendants pursuant to the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.[1]

**I.   Background**

    **A.   The Parties**

PFP is a New Jersey limited liability company that "organize[s] marquee soccer events and invest[s] in soccer teams."  (Am. Compl. at ¶ 4.)[2]  John F. McCarthy, III, a citizen of New Jersey, is the sole member of PFP.  (<u>Id.</u>)

It appears that Defendants are either citizens of or have strong ties to Ireland.  FAI, a limited liability company maintaining its principal place of business in Dublin, Ireland, acts as the governing body for Irish football.  (<u>Id.</u> at ¶ 5.) Delaney resides in Ireland and is the chief executive officer of FAI.  (<u>Id.</u> at ¶ 6.)  Smyth previously served as FAI's commercial director, currently owns a consulting firm, and resides in Ireland.  (<u>Id.</u> at ¶ 7.)  Smith previously served as FAI's

_____

[1] It appears that PFP has failed to serve LDMC.  The Court will thus also dismiss the Amended Complaint insofar as it is asserted against LDMC.  <u>See</u> Fed.R.Civ.P. 4(m).

[2] The parties use the terms "football" and "soccer" interchangeably.  The Court, for ease of reference, will refer only to football in the remainder of this Memorandum Opinion.

internal compliance officer, resides in Switzerland, and is now
employed by the Union of European Football Associations.  (Id.
at ¶ 8.)  Mooney previously served as FAI's head of league
marketing and promotion, resides in Switzerland, and, like
Smith, is currently employed by the Union of European Football
Associations.  (Id. at ¶ 9.)  LDMC is an unincorporated
organization that owns the Jackman Park football grounds in
Limerick, Ireland.  (Id. at ¶ 10.)

McCarthy first became acquainted with Moving Defendants
through various unconsummated business dealings related to
football.  Those dealings included, inter alia, match
promotions, ticket sales, and the attempted creation of a
nonprofit entity.  (Id. at ¶¶ 38, 45, 63-70.)

**B.   PFP's Purchase of an Irish Football Club**

PFP alleges that Moving Defendants induced PFP into
investing in Limerick Thirty Seven FC Limited ("Limerick FC"),
an existing Irish football club in Limerick, Ireland that faced
"imminent bankruptcy."  (Id. at ¶¶ 73, 147-52.)  PFP
specifically alleges that Smith and Mooney, in January of 2008,
called and sent e-mails to McCarthy, inviting McCarthy to invest
in Limerick FC while also providing him with inaccurate and
misleading information regarding Limerick FC's financial health.
(Id. at ¶¶ 71-75.)

PFP also alleges that Smith and Mooney made several claims regarding Limerick FC's ability to earn revenue.  (Id. at ¶¶ 74-80.)  Smith, PFP alleges, misrepresented that Limerick FC could earn revenue comparable to that of football clubs in similarly sized cities and eliminate losses immediately under an appropriate business plan.  (Id. at ¶¶ 75-76.)  Mooney, PFP alleges, misrepresented that Limerick FC could be financially "self-sustaining" and based such an assessment on financial data that "included loans and/or contributions" as revenue.  (Id. at ¶ 80.)

McCarthy traveled to Ireland and, on January 18, 2008, met with Delaney, Smyth, Mooney, and Smith at FAI headquarters in Dublin.  (Id. at ¶ 89.)  PFP alleges that, at this meeting, Moving Defendants "stressed the 'opportunities' in investing in Limerick FC."  (Id.)  PFP further alleges that, at this meeting in Dublin, Delaney, Smyth, Mooney, and Smith agreed that FAI would arrange fund-raising dinners and interleague football matches against English, Spanish, and Scottish teams, and would further help Limerick FC achieve financial viability by providing tickets to international football matches.  (Id. at ¶¶ 90, 97.)

McCarthy, on January 20, 2008, met with Limerick FC's shareholders in Ireland.  (See id. at ¶ 100; Moving Defs.' Br.

at 5.)  McCarthy reached an agreement with those shareholders, resulting in PFP's acquisition of a 91% interest in Limerick FC. (See Am. Compl. at ¶ 100.)

McCarthy, on January 21, 2008, again met with Delaney in Limerick.  (Id. at ¶ 94.)  PFP alleges that McCarthy advised Delaney that FAI's support was necessary to PFP's investment in Limerick FC.  (Id. at ¶¶ 95-98.)  PFP also alleges that Delaney agreed to provide the aforementioned support, and thus, McCarthy and FAI held a press conference, in Ireland, to announce PFP's involvement with Limerick FC.  (Id. at ¶¶ 98-99.)  PFP, between January 28, 2008 and August 14, 2008, accordingly made wire transfers to Limerick FC totaling $428,500.  (Id. at ¶ 135.)

PFP alleges that, of the two fund-raising events which FAI was to arrange, it arranged only one fund-raising dinner, in October of 2008.  (Id. at ¶¶ 104, 111.)  PFP also alleges that FAI failed to arrange a match between Limerick FC and Celtic FC, a Scottish football club.  PFP alleges that it was prevented from arranging a match between Limerick FC and Sunderland FC, an English football club, when FAI, in 2009, refused to sanction the match.  (Id. at ¶¶ 113-14.)

PFP additionally alleges that Moving Defendants omitted and/or misrepresented the facts surrounding a debt owed by Limerick FC to LDMC.  (Id. at ¶ 86.)  This debt arose from

Limerick FC's agreement to renovate Jackman Park.  (Id.)  PFP alleges that Smith required McCarthy to settle Limerick FC's outstanding debts by the deadline for licensure by the Irish football league; PFP, however, alleges that such a condition was not necessary to obtaining a license.  (Id. at ¶¶ 82-84.)  PFP alleges that it was thereby induced into repaying Limerick FC's previous debt owed to LDMC.  (See id. at ¶¶ 86-88.)

McCarthy, on June 23, 2009, met with Pat O'Sullivan in Limerick to discuss Limerick FC's "ongoing financial difficulties."  (Id. at ¶ 118.)[3]  On November 30, 2009, McCarthy resigned as a director of Limerick FC.  (Id. at ¶ 121.)  It appears that O'Sullivan subsequently dissolved Limerick FC.  (See dkt. entry no. 17-4, McCarthy Decl. at ¶ 116.)

PFP now alleges that Moving Defendants misrepresented, misstated, or omitted facts concerning the: (1) amount of revenue earned by League of Ireland football teams that were comparable to Limerick FC; (2) earnings potential of Limerick FC; (3) computation of Limerick FC's earned revenue; (4) League of Ireland's licensing procedure; and (5) facts concerning funds owed by Limerick FC to LDMC.  (Am. Compl. at ¶¶ 70-80.)  PFP

---

[3] O'Sullivan is a Limerick, Ireland businessman who provided to Limerick FC the funds needed to complete the 2009 football season.  (Am. Compl. at ¶¶ 118-20.)  O'Sullivan owns Munster Football Club, Ltd. which is licensed by the FAI as the League of Ireland team in Limerick.  (Id. at ¶ 122.)

also alleges that Moving Defendants damaged PFP by agreeing but ultimately failing to: (1) arrange promotional matches; (2) organize fund-raising dinners; and (3) deliver tickets to FAI's international matches.  (Id. at ¶ 92.)  PFP argues that, but for these misrepresentations, misstatements, and omissions, PFP would not have agreed to purchase a 91% stake in Limerick FC and would not have suffered related losses in the amount of $428,500.

PFP accordingly brings this action against Defendants, raising several claims against different entities and individuals.  It raises claims against all Defendants for breach of duty of good faith and fair dealing.  (Id. at ¶¶ 174-77.)  It raises claims only against Moving Defendants for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"); (2) violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. § 2C:41-1 et seq. ("NJ RICO"); (3) mail fraud under 18 U.S.C. § 1341; (4) wire fraud under 18 U.S.C. § 1343; (5) common law fraud; (6) prima facie tort; and (7) negligence.  (Id. at ¶¶ 127-53, 168, 171.)  PFP also raises claims against FAI and LDMC for quantum meruit, and against FAI alone for promissory estoppel and breach of contract.  (Id. at ¶¶ 127-77.)

Moving Defendants now move to dismiss the Amended Complaint insofar as it is asserted against them.  The Motion relies on several theories, including the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  (<u>See</u> Moving Defs.' Br. at 24.)

## II.  Discussion

### A.   The Doctrine of <u>Forum</u> <u>Non</u> <u>Conveniens</u>

The doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> permits the Court to refuse to hear a case despite having jurisdiction when doing so would better serve the parties' convenience and the interests of justice.  <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 504 (1947); <u>see also</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 249 (1981).[4] The Court, when deciding whether to dismiss a case on the grounds of <u>forum</u> <u>non</u> <u>conveniens</u>, must address three issues: (1) the availability of an adequate alternative forum; (2) the amount of deference that the plaintiff's choice of forum demands; and (3) the balance of the private and public interest factors that weigh in favor of one forum or another.

---

[4] A Court need not consider personal jurisdiction as a factor in the analysis when "considerations of convenience, fairness, and judicial economy so warrant."  <u>Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.</u>, 549 U.S. 422, 432 (2007). It appears that some Defendants, including LDMC, may not be subject to jurisdiction in New Jersey.  (<u>See</u> Am. Compl. at ¶¶ 10, 16.)  <u>See also</u> <u>Lacey v. Cessna Aircraft Co.</u>, 932 F.2d 170, 190 (3d Cir. 1991) ("<u>Lacey II</u>") (acknowledging the "importance of getting all concerned parties under one judicial roof").  The Court here, when analyzing this action under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, bypasses the jurisdiction inquiry and resolves the Motion in the interests of justice, fairness, and judicial economy.  <u>Sinochem Int'l Co.</u>, 549 U.S. at 432.

Chigurupati v. Zenotech LLC, No. 11-3429, 2012 WL 1743097, at *1 (3d Cir. May 17, 2012); Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989).

Dismissal pursuant to this doctrine is proper where the defendant meets the burden of (1) establishing an adequate alternative forum and (2) demonstrating that the plaintiff's chosen forum would create "oppressiveness and vexation to [the] defendant . . . out of all proportion to [the] plaintiff's convenience." Koster v. (Am.) Lumbersmen Mut. Cas. Co., 330 U.S. 518, 524 (1947); Lacey v. Cessna Aircraft Co., 862 F.2d 38, 42 (3d Cir. 1988) ("Lacey I"). Dismissal is also proper where the defendant establishes that a court's own administrative and legal difficulties render the plaintiff's chosen forum inappropriate. Piper Aircraft, 454 U.S. at 241; Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008). The resolution of a motion to dismiss for forum non conveniens is committed to the sound discretion of the district court. Van Cauwenberghe v. Biard, 486 U.S. 517, 518 (1945) (acknowledging that a district court is accorded substantial flexibility in evaluating a forum non conveniens motion and that each case turns on its facts); see also Windt, 529 F.3d at 189 (confirming that a district court's dismissal of a complaint on forum non conveniens grounds is reviewed only for abuse of discretion).

9

The Court, when resolving a motion to dismiss for <u>forum</u> <u>non</u> <u>conveniens</u>, "should ascertain the nature of the action, the existence of any potential defenses, and the essential sources of proof," but not "'entangle' itself in the facts of the case." <u>Lacey II</u>, 932 F.2d at 180-81.  The <u>forum</u> <u>non</u> <u>conveniens</u> analysis "may be resolved on affidavits presented by the parties."  <u>Van Cauwenberghe</u>, 486 U.S. at 529; <u>see also</u> <u>Lacey I</u>, 862 F.2d at 44 (relying on affidavits to determine that witnesses had made themselves available for depositions in British Columbia). Where a district court has considered all relevant public and private interest factors, and where the balance of such factors is reasonable, the district court's decision deserves substantial deference.  <u>See</u> <u>Lony</u>, 886 F.2d at 631 (quoting <u>Piper Aircraft</u>, 454 U.S. at 257).

**B.   Availability of an Adequate Alternative Forum**

The availability of an adequate alternative forum is established when defendants are amenable to process in an alternative forum and the claims at issue are cognizable in that forum.  <u>Piper Aircraft</u>, 454 U.S. at 254; <u>see also</u> <u>Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP, Ltd.</u>, 860 F.Supp. 1055, 1064 (D.N.J. 1994).  This inquiry ensures that the alternative forum provides the plaintiff with appropriate redress.  <u>Kultur Int'l Films</u>, 860 F.Supp. at 1064.  The

threshold for establishing an adequate alternative forum is low. Piper Aircraft, 454 U.S. at 254 n.22; see also Tech. Dev. Co., Ltd. v. Onischenko, 174 Fed.Appx. 117, 120 (3d. Cir 2006) ("Inadequacy of the alternative forum is rarely a barrier to forum non conveniens dismissal.").

Dismissal is not foreclosed on forum non conveniens grounds merely because the "evidentiary record regarding the availability of an adequate alternative forum is sparse or nonexistent." Miller v. Bos. Scientific Corp., 380 F.Supp.2d 443, 449 (D.N.J. 2005). If the parties present a legitimate dispute concerning the adequacy of the alternative forum, then the defendant should provide an evidentiary record establishing that the plaintiff's chosen forum is inadequate. See id. (granting dismissal where plaintiffs failed to allege that "they would be wholly deprived of a remedy" in alternative forum).

### 1. Moving Defendants are Amenable to Process in an Irish Forum

Moving Defendants are amenable to process in an Irish court. Each Moving Defendant has submitted a declaration stating that it is "amenable to proceeding with litigation in Ireland." (Dkt. entry no. 11-6, Delaney Decl. at ¶ 32; dkt. entry no. 11-9, Smyth Decl. at ¶ 19; dkt. entry no. 11-8, Smith Decl. at ¶ 23; dkt. entry no. 11-7, Mooney Decl. at ¶ 23.) See also In re Banco Santander Secs.-Optimal Litig., 732 F.Supp.2d

1305, 1331 (S.D. Fla. 2010) (finding that "Irish law recognizes the validity of consent to jurisdiction").[5]

### 2.  Moving Defendants' Claims Appear to be Cognizable in an Irish Forum

Each of PFP's claims appear cognizable under Irish law. Moving Defendants contend that no evidence exists "to suggest [PFP] cannot obtain [convenient] relief . . . in Ireland." (Moving Defs.' Br. at 21.)  For the reasons that follow, the Court agrees.

PFP may pursue its common law claims in an Irish court and may seek the same remedies otherwise available to it in this forum.  See, e.g., In re Herald, Primeo, and Thema Secs. Litig., No. 09-289, 2011 WL 5928952, at *13 (S.D.N.Y. Nov. 29, 2011) (concluding that Ireland was an adequate forum for litigating tort and contract claims); see also In re Banco, 732 F.Supp.2d at 1332 (concluding that Irish courts "recogniz[e] causes of action for fraud, negligence, breach of contract, and other causes similar to common law claims in the United States"); Kroger, Inc. v. O'Donnell, No. 07-3091, 2007 WL 3232586, at *3 (D.N.J. Oct. 31, 2007) (finding that an Irish court was a more convenient forum for plaintiff's claims of misappropriation of confidential information, breach of contract, and tortious

_____

[5] Delaney, as chief executive officer of FAI, consents to jurisdiction in Ireland both on behalf of himself and FAI.  (See Delany Decl. at ¶¶ 1, 32.)

interference with economic advantage); Oxley v. Wyeth Labs., Inc., No. 91-1285, 1992 WL 116308, at *2 (E.D. Pa. May 20, 1992) (determining that an Irish court provided plaintiff with adequate remedies for a breach of implied warranty claim).

It similarly appears that PFP's assertion of RICO and NJ RICO claims does not prevent application of the doctrine of forum non conveniens in these circumstances.  The United States Court of Appeals for the Second Circuit has dismissed RICO claims pursuant to the doctrine of forum non conveniens where such claims were premised on alleged fraudulent acts. Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 129-30 (2d Cir. 1987) (affirming dismissal of complaint for forum non conveniens as appropriate where a Philippine court, though unable to resolve the plaintiff's RICO claims, could provide redress on the underlying instances of fraud); see also Windt, 529 F.3d at 193 (acknowledging federal courts' refusal "to afford RICO claims special treatment in forum non conveniens inquiries"). An alternative forum's ability to adjudicate the underlying fraud allegations controls the inquiry.  See Transunion, 811 F.2d at 129.  Here, PFP alleges RICO and NJ RICO violations stemming from an underlying claim that Moving Defendants fraudulently induced PFP into investing in Limerick FC.  It thus appears that an Irish forum may provide adequate redress for

PFP's RICO and NJ RICO claims because those claims rest upon the same or substantially the same allegations as PFP's fraud and prima facie tort claims.  (See generally Am. Compl.)

PFP, in contesting that Ireland provides an adequate forum, argues that it "simply does not have the funds needed to litigate this case in Ireland."  (Pl. Opp'n Br. at 33.)  PFP asserts that it would have to escrow funds to satisfy the cost of Defendants' legal fees, if PFP loses, and hire prohibitively expensive legal counsel in Ireland.  (Id.)

PFP's arguments are misplaced.  PFP's claim of financial hardship as a result of litigating in an Irish forum is not germane to the adequate alternative forum analysis.  It is instead appropriately "weighed in determining the balance of convenience after the [C]ourt determines that an alternative forum is available."  See Murray v. British Broad. Corp., 81 F.3d 287, 292 (2d Cir. 1996); see also Kristoff v. Otis Elevator Co., No. 96-4123, 1997 WL 67797, at *2 (E.D. Pa. Feb. 14, 1997) (finding that plaintiff's financial situation "does not negate the existence of an appropriate alternative forum").  Therefore, given that Moving Defendants are amenable to process in Ireland and Irish courts appear to provide appropriate redress for PFP's claims, the Court finds that Moving Defendants have met their burden of showing that Ireland is an adequate alternative forum.

### C.   PFP's Choice of Forum is Due Some Deference

Courts generally accord deference to a plaintiff's choice to commence an action in a home forum.  Lony, 886 F.2d at 633.  However, "dismissal should not be automatically barred when a plaintiff has filed suit in [its] home forum.  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  Piper Aircraft, 454 U.S. at 255 n.23; see also Lacey II, 932 F.2d at 180 (acknowledging that private and public interests must weigh heavily on the side of the foreign forum in order for movant to prevail).  The forum non conveniens analysis does not end simply because a plaintiff brings an action in its home forum.  Lynch v. Hilton Worldwide, Inc., No. 11-1362, 2011 WL 5240730, at *3 (D.N.J. Oct. 31, 2011) (dismissing complaint filed in New Jersey resident's home forum where pertinent facts giving rise to lawsuit had little connection to New Jersey).

The Court recognizes that PFP chose to bring this action in its home forum and thus accords PFP's choice of forum some deference.  See Windt, 529 F.3 at 191.  The Court, however, concludes that the private and public interest factors balanced in sections II.D.1 and II.D.2 of this Memorandum Opinion, infra,

substantially outweigh the deference accorded to PFP's forum selection.[6]

### D.   The Balance of Private and Public Interest Factors

The Court, in exercising its discretion, must determine whether the private and public interest factors tip decidedly in favor of the alternative forum. Lacey I, 862 F.2d at 43. The factors are not equal; the balancing exercise is therefore "essentially qualitative[,] not quantitative." Lacey II, 932 F.2d at 180-82 (concluding that "depending on the case, some factors are more equal than others"). The Court here has considered PFP's arguments but finds that, on balance, Moving Defendants have established "oppressiveness and vexation" to them "out of all proportion to [PFP's] convenience." Piper Aircraft, 454 U.S. at 242.

---

[6] The Court acknowledges that a valid forum selection clause may weigh on the degree of deference accorded to a plaintiff's choice of forum. See Kroger, Inc., 2007 WL 3232586, at *3 (according little deference to plaintiff who agreed to Ireland as nonexclusive forum for settling disputes, conducted business in Ireland, and traveled to Ireland because plaintiff could reasonably expect to litigate in Ireland). The Court further acknowledges that McCarthy and FAI, in a confidentiality agreement, agreed to litigate all disputes arising under that agreement in an Irish forum, under Irish law. (Dkt. entry no. 11-4, Exhibit A to Angelo A. Stio, III, Esq. Decl. at ¶ 11.1.) The extent to which that agreement bears on this action is, however, unclear. The Court, faced with such ambiguity, places no weight on the forum selection clause in the confidentiality agreement and finds that it has no practical impact on the resolution of the Motion.

### 1.  Private Interest Factors

The Court must consider the relevant private interest factors.  Those factors, as they bear on this action, are the: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; and (4) practical considerations that make trial of a case easy, expeditious, and inexpensive.  Gulf Oil, 330 U.S. at 508; Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 161 (3d Cir. 2010).[7]

### a.  Relative Ease of Access to Sources of Proof

PFP contends that the sources of proof needed in this case are PFP's and Defendants' sworn testimony, and PFP's or Defendants' documents.  (Pl. Opp'n Br. at 33.)  Moving Defendants contend that the necessary sources of proof are primarily located in Ireland.  (Moving Defs.' Br. at 23.)  Moving Defendants point to witnesses including PFP, Defendants, third-party investors in Limerick FC, employees of FAI, and

---

[7] Other courts have considered each forum's ability to view the premises.  See, e.g., Reid-Walen v. Hansen, 933 F.2d 1390, 1397-87 (8th Cir. 1991) (determining that physical layout of accident site could be accurately established through photographs).  The Court does not address this factor, however, because the parties do not discuss it and it seems inappropriate to this matter.  See Gulf Oil, 330 U.S. at 508 (reasoning that possibility of view of premises should be considered "if view would be appropriate to the action").

employees of Limerick FC.  (Id.)  Moving Defendants also assert
that the documents relevant to the case are maintained in
Ireland.  (Id.)

PFP contends that the relevant documents are "easily
available from Plaintiff or from Defendants" and therefore
argues that documents maintained overseas should not create a
barrier to its choice of forum.  (Pl. Opp'n Br. at 34.)  The
Court acknowledges that the relative ease of access to
documentary evidence, particularly in light of modern
technological advancements, weighs in plaintiff's favor.  See,
e.g., Joint Stock Soc. v. Heublein, Inc., 936 F.Supp. 177, 190
(D. Del. 1996) ("the state of technology greatly reduces the
burden placed on parties with respect to the storage,
production, transfer, and exchange of information").

The Court also finds, however, that a majority of the
sources of proof are situated in Ireland because a majority of
the party and non-party witnesses reside in or near Ireland.
(Am. Compl. at ¶¶ 5-10.)  See Eurofins Pharma US Holdings, 623
F.3d at 162 (determining that a "great majority of proof and
witnesses in France favor[ed] dismissal" where two parties were
from United States and three parties were from France).  Even if
non-party witnesses are not needed to testify, the party
witnesses residing in or relatively near Ireland comprise a

18

majority.  Only two of PFP's witnesses, McCarthy and Charles Stillitano, reside in New Jersey.  (McCarthy Decl. at ¶ 141.)[8] FAI, Delaney, Smyth, and LDMC, however, reside in Ireland, and Smith and Mooney reside in Switzerland.[9]

It thus appears that the cost and ease of access to all sources of proof, considered together, weigh in favor of dismissal and allowing the parties to reconvene before an Irish court.  The inconvenience and cost of obtaining live testimony from party and non-party witnesses greatly outweigh the relatively mild costs and inconveniences associated with obtaining relevant documentary evidence.

> **b.   Availability of Compulsory Process for Attendance of Unwilling Witnesses**

The ability to compel non-party witnesses also heavily weighs in favor of resolving this action in an Irish forum. This Court lacks subpoena power over Defendants and other non-party witnesses who reside in Ireland and Switzerland.  See Fed.R.Civ.P. 45(b) (a federal court's subpoena power is limited

---

[8] Stillitano was a founding member of PFP. (Stillitano Decl. at ¶10.)  Stillitano, in his capacity as both an executive director and a member of PFP, interacted with Delaney and Smyth on various occasions.  (Id. at ¶¶ 2-3, 12.)

[9] Moving Defendants consent to jurisdiction in Ireland, but contest New Jersey's authority to exercise both personal and subject matter jurisdiction.  (See Defs.' Br. at 12-21; Delaney Decl. at ¶ 32; Smyth Decl. at ¶ 19; Smith Decl. at ¶ 23; Mooney Decl. at ¶ 23.)

to service within 100 miles of the place specified for trial).
"Irish courts can," however, "compel live testimony from anyone
residing in Ireland." In re Banco, 732 F.Supp.2d at 1337.
Given that (1) a majority of Defendants reside in Ireland; (2)
the two Defendants who do not reside in Ireland are willing to
proceed with trial in Ireland; and (3) non-party witnesses
likely reside in Ireland, an Irish forum would have a far
greater ability to compel the attendance of both willing and
unwilling witnesses than this Court.

### c.    Cost of Obtaining Attendance of Willing Witnesses

The costs associated with obtaining the attendance of
witnesses similarly weighs in favor of an Irish trial, because a
majority of the party and non-party witnesses reside in or near
Ireland. See In re Banco, 732 F.Supp.2d at 1337 (recognizing
that it would have been more convenient and less expensive "for
willing witnesses to attend trial in Ireland than in the United
States because many of those witnesses [were] either located in
Ireland or other European countries"). PFP identifies
Defendants as "necessary witnesses." (Pl. Opp'n Br. at 35.)
Moving Defendants contend that they will be forced to expend
substantial money and time in traveling and coordinating
depositions and testimony of necessary witnesses. (Delaney
Decl. at ¶ 29-30; Smyth Decl. at ¶ 16-17; Mooney Decl. at ¶ 20-

21; Smith Decl. at ¶ 19-21.)   The cost of obtaining witness

attendance therefore weighs in favor of an Irish forum.

### d.   Practical Considerations that Make Trial Easy, Expeditious, and Inexpensive

The Court also concludes that an Irish forum would provide

for an easy, expeditious, and inexpensive trial.   PFP argues

that the cost of litigating in Ireland would prohibit PFP from

bringing its claims in an Irish forum.   (Pl. Opp'n Br. at 33-

35.)   PFP estimates that the cost of litigating in Ireland will

be $250,000.   (Id. at 34.)   Moving Defendants argue in contrast

that litigating in New Jersey is causing and will continue to

cause substantial hardship.   (Moving Defs.' Br. at 23.)   While

the cost of litigating in a distant forum creates financial

difficulty for each party, New Jersey provides a convenient and

inexpensive forum only for PFP, while Ireland provides a

convenient and inexpensive forum for FAI, Delaney, Smyth,

Mooney, Smith, and LDMC.   Indeed, an Irish forum is also a

convenient and inexpensive forum for other witnesses and

interested parties who may reside in or near Ireland.

Other factual considerations also guide the Court's

analysis.   A plain reading of the Amended Complaint makes clear

that the crux of the alleged wrongdoings -- that is, Defendants'

allegedly tortious actions, statements, and misrepresentations -

- occurred in Ireland.   (See generally Am. Compl.)   It thus

strongly appears that Irish law will control the resolution of PFP's claims.

### 2.   Public Interest Factors

The Court must also consider the relevant public interest factors.  Here, those factors are the: (1) administrative difficulties flowing from court congestion; (2) interest in having local disputes resolved at home; (3) interest in trying a case brought under 28 U.S.C. § 1332 ("Section 1332") in a forum that is at home with the case's governing law, and the avoidance of unnecessary problems in conflict of laws, or the application of foreign laws; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty.  Gulf Oil, 330 U.S. at 508; Eurofins Pharma US Holdings, 623 F.3d at 161.  In evaluating the public interest factors, the Court must additionally consider "the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum."  Van Cauwenberghe, 486 U.S. at 528.

The locus of the alleged culpable conduct concerns PFP's investment in Limerick FC, an Irish football team based in Limerick, Ireland.  McCarthy met with Moving Defendants in Ireland to discuss Limerick FC's financial fitness.  (Am. Compl. at ¶ 89.)  McCarthy, during another meeting in Ireland with Delaney, further discussed investing in Limerick FC.  (See

22

id. at ¶ 100.)  McCarthy entered into the confidentiality agreement with FAI in Ireland.  (McCarthy Decl. at ¶ 124.) McCarthy met with Limerick FC's shareholders in Ireland.  (See Am. Compl. at ¶¶ 89-99.)  He agreed to invest in Limerick FC while in Ireland.  (Id.)  McCarthy and FAI held a press conference to announce PFP's involvement with Limerick FC in Ireland.  (Id. at ¶ 99.)  McCarthy met with O'Sullivan in Limerick.  (Id. at ¶ 118.)  Limerick FC plays its home games in Limerick.  (Moving Defs.' Br. at 1.)  Limerick FC trains in Limerick.  (See id.)  The alleged debt to LDMC resulted from Limerick FC's agreement to renovate the Jackman Park located in Limerick.  (Id. at ¶ 86.)

PFP sought support from Moving Defendants in the form of fund-raisers and arrangement of football matches that were to occur in Ireland.  (See Am. Compl. at ¶¶ 105-14.)  McCarthy sought to arrange matches with other European clubs including Scottish club, Celtic FC and English club, Sunderland FC.  (Id. at ¶¶ 110, 113-14.)  FAI, in assisting Limerick FC with a fund-raiser, arranged dinner with another Irish football club's manager.  (Id. at ¶ 105.)

PFP's involvement with Limerick FC originated from an investment in an Irish football club that is closely connected to Ireland.  PFP, over the course of this sixteen month

involvement, traveled to Ireland, held various meetings in Ireland, and attempted to raise capital and non-financial support through relationships and events centered in or near Ireland.  The conduct at issue is therefore more closely connected to Ireland than to New Jersey.

### a. Administrative Difficulties Flowing from Court Congestion

Moving Defendants argue that this action should be litigated in Ireland to "avoid [an] unnecessary burden on this Court and other litigants."  (Defs.' Br. at 24.)  PFP argues, in contrast, that the action does not present "administrative difficulties" for the Court.  (Pl. Opp'n Br. at 35.)  The Court agrees that litigating this case in a New Jersey forum will increase court congestion and, therefore, present unnecessary administrative difficulties.  See Wm. H. McGee & co., Inc. v. United Arab Shipping Co., 6 F.Supp.2d 283, 292 (D.N.J. 1997); see also Pain v. United Techs. Corp., 637 F.2d 775, 792 (D.C. Cir. 1980) (reasoning that local dockets should not be clogged by cases which lack significant contacts to chosen forum). Given that the case has minimal connections to a New Jersey forum, the inconvenience imposed on the Court by litigating such a case points in favor of an Irish forum.

> ### b.   Interest in Having Local Disputes Resolved at Home

PFP argues that New Jersey has "an interest in protecting [its] residents from out-of-state wrongdoers" and, therefore, that New Jersey has the stronger local interest in this case. (Pl. Opp'n Br. at 36.)  PFP relies on Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir. 1993).  The court in Grand Entertainment concluded, however, that the plaintiff's choice of forum did not offend traditional notions of fair play and substantial justice because, inter alia, "there [was] no evidence that another state or nation . . . ha[d] an interest superior to" the plaintiff's chosen forum.  Grand Entm't Grp., 988 F.2d at 484.

We do not reach the same conclusion.  We find, for the reasons detailed above, that Ireland here has an interest superior to New Jersey, PFP's chosen forum.  Ireland's interest in resolving its local dispute in its home courts is another factor influencing this Court to dismiss.

> ### c.   Interest in Trying a Case Brought Under Section 1332 in a Forum that is at Home with the Case's Governing Law, and the Avoidance of Unnecessary Problems in Conflict of Laws, or the Application of Foreign Laws

A court need not determine which forum's law will apply when deciding a motion to dismiss on grounds of forum non conveniens.  Piper Aircraft, 454 U.S. at 251.  The Court must,

25

however, "immerse itself to a certain degree in the facts of the case." Lacey II, 932 F.2d at 181.  It appears that the facts establish that Irish law will apply in this case because Ireland has "the most significant relationship" to PFP's claims.  (See Defs.' Br. at 24.)  See Integral Res. (PVT) Ltd. v. Istil Grp., Inc., 155 Fed.Appx 69, 70-71 (3d Cir. 2005).  "The [forum] whose interests are most deeply affected by the dispute should apply its law."  In re Banco, 732 F.Supp.2d at 1340.

The locus of the alleged culpable conduct is more closely connected to Ireland than to New Jersey.  The alleged culpable conduct more immediately affects Irish residents, Irish businesses, and Irish policies regarding Irish football.  This action, as demonstrated in the Amended Complaint, has only a limited tie to New Jersey; it is connected in a much greater way to Ireland.  Indeed, both PFP and Moving Defendants suggest that Irish law will apply.  (See Pl. Opp'n Br. at 36; Moving Defs.' Br at 24.)  The Court thus, in the interest of resolving the action in the forum most closely connected to it in fact, and in the interest of avoiding unnecessary problems in conflict of laws or the application of foreign laws, now concludes that an Irish forum is superior to this Court for litigating PFP's claims.

### d.   Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." Gulf Oil, 330 U.S. at 508-09.  Moving Defendants argue that "the New Jersey community has no relation to this matter" and, thus, litigating this case in a New Jersey forum would unfairly burden New Jersey citizens with jury duty. (Defs.' Br. at 24.)  We agree.  The Court, as discussed above, finds that Ireland has the greatest interest in resolving this action.  Its citizens, as such, have the greatest interest in participating in the judicial process.

### III. Conclusion

Moving Defendants have demonstrated both that: (1) Ireland is an adequate alternative forum; and (2) the balance of private and public interest factors implicated by the action weighs heavily in favor of dismissal.  The Court recognizes and accords deference to PFP's choice of this Court as its forum, but concludes that the balance of implicated private and public interest factors weigh heavily against it.

The Court will, for good cause appearing, grant the Motion insofar as it relies on the doctrine of <u>forum non conveniens</u>, and issue an appropriate Order and Judgment.[10]

                                        s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

Dated:  July 23, 2012

---

[10] The Court would have been inclined, had LDMC been served and joined in the Motion, to dismiss the claims asserted against it based on the doctrine of <u>forum non conveniens</u>.  It appears that the forgoing analysis would have applied with equal force to LDMC.